UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARY HOLLOWAY,

                Plaintiff,

      v.

DAVID JOSEPH,

                Defendant.
_____

<u>DECISION & ORDER</u>

10-CV-6470P


## <u>PRELIMINARY STATEMENT</u>

Plaintiff Mary Holloway ("Holloway"), acting *pro se*, has filed suit against Rochester Police Officer David Joseph ("Joseph") asserting claims under 42 U.S.C. § 1983 for malicious prosecution, false arrest and false imprisonment arising from her arrest on September 6, 2007, for second degree harassment under New York Penal Law § 246.26.[1] (Docket # 1). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a magistrate judge. (Docket # 9).

A bench trial was conducted before this Court on March 7, 2013.[2] Holloway testified in her own behalf, and Joseph called himself and James Ferguson ("Ferguson"), the individual whose complaint led to the arrest of Holloway. Based upon the findings of fact set forth below, and for the reasons explained more fully below, judgment is granted in favor of the defendant.

_____

[1] The City of Rochester was originally named as another defendant in the action, but was subsequently dismissed. (Docket # 4).

[2] The transcripts of the trial proceedings on March 7, 2013 shall be referred to herein as "Tr. __." (Docket # 52). The trial exhibits shall be referred to herein as "Def. Ex. __" or "Pl. Ex. __."

**FINDINGS OF FACT**

On September 6, 2007, Joseph was twice dispatched to 274 Ames Street in the City of Rochester in response to 911 complaints by Ferguson that he was being harassed by Holloway. (Tr. 24-25). In the first call to 911, which occurred at approximately 10:12 a.m., Ferguson complained that Holloway was harassing him by repeatedly driving by his house located at 274 Ames Street. (Tr. 24-26). Joseph drove to Ferguson's residence, interviewed him and determined that Holloway did not appear to be in the vicinity. (Tr. 25-26). Joseph had no interactions with Ferguson prior to the September 6 interview. (Tr. 29).

Ferguson informed Joseph that he had an ongoing dispute with Holloway, but did not provide any facts about the dispute. (Tr. 27). Joseph did not inquire whether either party had an order of protection against the other.[3] (Tr. 30-31). He did not file a report with respect to the incident. (Tr. 26).

At approximately 11:14 a.m., Ferguson placed another call to 911. (Tr. 26). Joseph again drove to Ferguson's residence, arrived at 11:43 a.m., and met him outside his house. (*Id.*). Holloway testified that at approximately 12:00 p.m., she called 911 to complain about Ferguson's behavior.[4] (Tr. 9, 12-13 and Def. Ex. 1 at 12). No evidence exists in the record, however, to suggest that Joseph was aware of such a call by Holloway.[5]

---

[3] Ferguson testified at trial that on August 30, 2007, he was arrested and prosecuted for harassing Holloway. (Tr. 40-43). Ferguson admitted that the charges "more than likely" resulted in an order of protection against him. (Tr. 40).

[4] At trial, Holloway testified that Ferguson drove to Holloway's daughter's residence, gave Holloway "the finger" and threatened to beat her. (Tr. 9).

[5] The 911 call record has an entry for 11:39 a.m. for a call by "Mary Halloway." (D. Ex. 1 at 12). The report is unclear whether any information was provided by the caller to the dispatcher. (*Id.*).

When Joseph interviewed Ferguson for the second time, Ferguson told him that Holloway had again driven by Ferguson's residence and that this time she had thrown a bottle at Ferguson. (Tr. 27). Ferguson reported that the bottle missed him and broke against the side of his house. (Tr. 27, 39).[6] Joseph observed broken glass in front of Ferguson's residence. (Tr. 27).

Following this second call, Ferguson swore out a criminal complaint against Holloway charging her with harassment in the second degree, in violation of New York State Penal Law § 240.26(3).[7] (Def. Ex. 3). The complaint alleged that Holloway "[e]ngage[d] in a course of conduct or repeatedly commit[ed] acts which alarm[ed] or seriously annoy[ed] another person and which serve[d] no legitimate purpose." (*Id.*). Specifically, the complaint alleged that Holloway had thrown a bottle at Ferguson that smashed against Ferguson's house. (*Id.*).

Joseph and another officer went to 314 Ames Street, Holloway's daughter's residence, to arrest Holloway. (Tr. 27 and Def. Ex. 2 at 2). Joseph knew Holloway from the neighborhood and had not had any negative interactions with her. (Tr. 29). According to Joseph, although he could have issued Holloway an appearance ticket, he chose to arrest her because of the ongoing dispute between Ferguson and her and because the reported harassment that morning appeared to be escalating. (Tr. 28). Joseph testified that it was customary practice to arrest a suspect on a complaint of repeated, escalating conduct. (*Id.*). Joseph further explained that he believed that it would have been imprudent to leave Ferguson and Holloway

---

[6] During the trial, Ferguson testified that the bottle was thrown from the passenger side, although he admitted that he had told Joseph that it was Holloway who threw the bottle. (Tr. 37).

[7] Although the complaint accuses Holloway of violating subsection 3 of New York Penal Law § 240.26, the certificate of disposition refers to subsection 1 of that statutory section. (Tr. 22; Pl. Ex. 12).

within close proximity to each other given their history and that Holloway's arrest would defuse the dispute for the day. (*Id.*). Holloway testified that when Joseph took her to the police headquarters following her arrest, she advised him that she had been at a doctor's office earlier in the day and denied harassing Ferguson. (Tr. 10).

Joseph subsequently learned that Ferguson had fabricated some of the information he had provided to Joseph on September 6, 2007. (Tr. 28). Ferguson was later charged with making a false sworn statement as a result of his fabrications. (*Id.* at 28-29 and Pl. Ex. 5). The harassment charges against Holloway were dismissed in January 2008. (Tr. 12, 23 and Pl. Ex. 12).

## DISCUSSION

To establish a claim under Section 1983, a plaintiff must demonstrate that the challenged conduct (1) was "committed by a person acting under color of state law"; and (2) "deprived [the plaintiff] of rights, privileges or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). Section 1983 creates no substantive rights; instead, it provides a "procedure for redress for the deprivation of rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). Here, no dispute exists that Joseph acted under color of state law. Rather, the central inquiry is whether his actions violated Holloway's constitutional rights.

### A. Probable Cause to Arrest

"The Fourth Amendment protects individuals against unreasonable searches and seizures." *Anthony v. City of New York*, 339 F.3d 129, 135 (2d Cir. 2003). In order to seize a

person without a warrant, the officers must have probable cause. *United States v. Delossantos*, 536 F.3d 155, 158 (2d Cir.) ("[a] warrantless arrest is unreasonable under the Fourth Amendment unless the arresting officer has probable cause to believe a crime has been or is being committed"), *cert. denied*, 555 U.S. 1056 (2008). Probable cause exists if "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v. McFadden*, 238 F.3d 198, 204 (2d Cir.) (alterations in original) (quoting *United States v. Cruz*, 834 F.2d 47, 50 (2d Cir. 1987)), *cert. denied*, 543 U.S. 898 (2001); *see also Curley v. Vill. of Suffern*, 268 F.3d 65, 69-70 (2d Cir. 2001) (internal quotation omitted) ("[p]robable cause exists when an officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested").

In general, when a putative victim advises an officer of a crime and signs a complaint, the officer has probable cause to arrest. *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998). The veracity of a victim's complaint to the police is assumed, *Miloslavsky v. AES Eng'g Soc'y, Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992), *aff'd*, 993 F.2d 1534 (2d Cir.), *cert. denied*, 510 U.S. 817 (1993), and a police officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest"; nor must the officer "prove [the arrestee's] version wrong." *Curley v. Vill. of Suffern*, 268 F.3d at 70 (internal quotation omitted). An arresting officer need not "believe with certainty" that the prosecution will be successful. *Id.*

Police officers are not absolutely privileged to arrest upon a charge by a putative victim, however, because "[s]ome people have axes to grind." *Mistretta v. Prokesch*, 5 F. Supp. 2d at 133. For this reason, complaints by victims will ordinarily establish probable cause "absent circumstances that raise doubts as to the victim's veracity." *Id.* (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995), *cert. denied*, 517 U.S. 1189 (1996)). "The most common situation in which such doubts arise is when there exists a prior relationship between the victim and the accused that gives rise to a motive for a false accusation." *Id.* "When such a relationship exists, and is known to the arresting officer before the arrest is made, the complaint alone may not constitute probable cause; the officer may need to investigate further." *Id.* In such situations, the victim's statement need not be wholly ignored, but "the police [must] have additional information to buttress the victim's statement." *Williams v. City of New York*, 2003 WL 22434151, *5 (S.D.N.Y. 2003) (quoting *McBride v. City of New Haven*, 2000 WL 559087, *11 (D. Conn. 2000)), *aff'd*, 120 F. App'x 388 (2d Cir. 2005); *see also Jovanovic v. City of New York*, 2006 WL 2411541, *7 (S.D.N.Y. 2006) ("the failure to make a further inquiry when a reasonable person would have done so may be evidence of a lack of probable cause") (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996)), *reconsidered in part on other grounds*, 2008 WL 355515 (S.D.N.Y. 2008).

In other words, where the officer is aware of a relationship between the victim and the accused, the officer is entitled to arrest the accused if the "victim precisely identifies the alleged perpetrator . . . and there is independent corroborative evidence to support at least some of the victim's assertions." *Brodie v. Fuhrman*, 2010 WL 1189347, *6 (E.D.N.Y. 2010) (quoting *Bullard v. City of New York*, 240 F. Supp. 2d 292, 298 (S.D.N.Y. 2003)). Corroborative

evidence may include: "(1) the officer's observation of the putative victim's physical injuries; (2) the level of detail and consistency in the putative victim's description of events; (3) the putative victim's identification of [the arrestee] by name and physical description; and (4) incriminating statements by [the arrestee]." *Williams v. Schultz*, 2008 WL 4635383, *9 (N.D.N.Y. 2008).

## B. Holloway's Claims

In her complaint, Holloway asserts claims for malicious prosecution, false arrest and false imprisonment. In order to prevail on these claims under Section 1983, Holloway must establish both a violation of the Fourth Amendment and the elements of these claims under New York state law. *See*, *e.g.*, *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (internal citation omitted) ("[i]n order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment . . . and establish the elements of a malicious prosecution claim under state law"). "Under New York state law, to prevail on a claim of false arrest [or false imprisonment[8]], a plaintiff must show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Tsesarskaya v. City of New York*, 843 F. Supp. 2d 446, 454 (S.D.N.Y. 2012) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003)). The existence of probable

---

[8] Under New York law, "[f]alse arrest is simply false imprisonment accomplished by means of an unlawful arrest." *Jenkins v. City of New York*, 478 F.3d 76, 88 n.10 (2d Cir. 2007). "False arrest and false imprisonment are largely synonymous because an imprisonment starts at the moment of arrest." *Id.* (quoting 59 N.Y. Jur. 2d False Imprisonment § 1). Accordingly, "[b]ecause a cause of action for false arrest is essentially the same tort as false imprisonment," they can be analyzed as one cause of action. *See Mitchell v. Home*, 377 F. Supp. 2d 361, 376 (S.D.N.Y. 2005); *Mejia v. City of New York*, 119 F. Supp. 2d 232, 252 (E.D.N.Y. 2000) ("[u]nder New York law, false arrest is considered to be a species of false imprisonment, and the two claims have identical elements").

cause to arrest "is a complete defense to an action for false arrest." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)).

Similarly, probable cause is an absolute defense to a cause of action for malicious prosecution. *Prowisor v. Bon-Ton, Inc.*, 426 F. Supp. 2d 165, 171 (S.D.N.Y. 2006), *aff'd*, 232 F. App'x 26 (2d Cir. 2007). "To establish a malicious prosecution claim under New York law, a plaintiff must show that a proceeding was commenced or continued against him, with malice and without probable cause, and was terminated in his favor." *Fulton v. Robinson*, 289 F.3d at 195.[9] "Typically, a warrantless deprivation of liberty from the moment of arrest to the time of arraignment will find its analog in the tort of false arrest, while the tort of malicious prosecution will implicate post-arraignment deprivations of liberty." *Prowisor v. Bon-Ton, Inc.*, 426 F. Supp. 2d at 171.

Judged under this authority, I find that Joseph had probable cause to arrest Holloway. The credible trial proof establishes that Joseph had received two reports from the alleged victim, Ferguson: first, that Holloway had verbally harassed him; and, second, that she subsequently had thrown a bottle at him. While Ferguson informed Joseph that he had an ongoing dispute with Holloway, Joseph testified credibly that he did not know any specific information about their dispute. During his encounter with Joseph, Ferguson identified himself, identified the alleged perpetrator, Holloway, and swore out a complaint against her under penalty

---

[9] Probable cause for claims involving malicious prosecution is assessed "in light of facts known or reasonably believed at the time the prosecution was initiated, and not at the time of arrest." *Castro v. Cnty. of Nassau*, 739 F. Supp. 2d 153, 169 (E.D.N.Y. 2010) (internal quotation omitted). In this case, the prosecution was initiated shortly after the arrest since the complaint was sworn that same day and Holloway was arraigned on the following day. (Def. Ex. 3 and Pl. Ex.12). In any event, no evidence has been adduced to demonstrate that Joseph was involved in the prosecution of the criminal charges after arresting her and filing the complaint.

of perjury.[10]  These circumstances, coupled with Joseph's observations of the broken glass in front of Ferguson's residence, constituted sufficient, although far from overwhelming, probable cause to arrest Holloway.  *See, e.g., Brodie v. Fuhrman*, 2010 WL 1189347 at * 6 & n.16 (photographs depicting complainant's purported injuries sufficiently corroborated complainant's assertions even though officer had knowledge of the "tense history" between complainant and arrestee); *Mistretta*, 5 F. Supp. 2d at 134 (officer's observation of broken furniture corroborated complainant's accusations even though complainant had a motive to fabricate the accusations against the arrestee).

Once probable cause to arrest was established, Joseph was not required to undertake any more expansive investigation.  *See Rae v. Cnty. of Suffolk*, 693 F. Supp. 2d 217, 224 (E.D.N.Y. 2010) ("the role of the court is not to overly scrutinize the decisions of police officers from its vantage in chambers, long after those decisions were made, but to determine whether the officers acted reasonably and in compliance with what the law requires based on what they knew at the time"); *McBride v. City of New Haven*, 2000 WL 559087 at *11 ("[o]nce the police have probable cause to arrest, they have no duty to continue investigating").  Nor does the fact that Joseph later learned that Ferguson had fabricated portions of his complaint vitiate the existence of probable cause at the time of the arrest where no evidence exists to suggest that Joseph knew or should have known of the fabrication before the arrest or prosecution.  *See*

---

[10]  Specifically, the complaint contains the following notice, typed in bold, capital letters:

"NOTICE: FALSE STATEMENTS MADE HEREIN ARE PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE NEW YORK STATE PENAL LAW."

(Def. Ex. 3).

*Bernard v. United States*, 25 F.3d at 102 ("probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information"); *Castro v. Cnty. of Nassau*, 739 F. Supp. 2d at 169 ("if there was probable cause to arrest a suspect, [the element of lack of probable cause to prosecute] can be met only if facts emerge following the arrest showing that the charges against the suspect are groundless").

Even if I were to conclude that probable cause was lacking, I would nonetheless find that Joseph is entitled to qualified immunity. "[Q]ualified immunity shields police officers acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known." *Thomas v. Roach*, 165 F.3d at 142. "'[Q]ualified immunity serves to protect police from liability and suit when they are required to make on-the-spot judgments in tense circumstances,' and officers are entitled to the defense unless the officers' judgment was so flawed that no reasonable officer would have made a similar choice." *Martin v. Tatro*, 2005 WL 2489905, *7 (N.D.N.Y. 2005) (alterations in original) (quoting *Lennon v. Miller*, 66 F.3d 416, 424-25 (2d Cir. 1995)). Where the claim is for arrest without probable cause, the defendant is entitled to a finding of qualified immunity "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991), *cert. denied*, 505 U.S. 1221 (1992).

Where probable cause is required, the qualified immunity standard will require "something less than actual probable cause." *See Prowisor*, 426 F. Supp. 2d at 173. This standard of "arguable probable cause" has been described by the Second Circuit as follows:

> Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law. It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.

*Cerrone v. Brown*, 246 F.3d 194, 203 (2d Cir. 2001) (internal quotations and citations omitted).

On the basis of the facts established at trial, I conclude that arguable probable cause for Holloway's arrest existed, and Joseph is thus entitled to qualified immunity for his actions in arresting and prosecuting Holloway. Under these circumstances described above, I find that, at a minimum, "officers of reasonable competence could disagree as to whether there was probable cause to arrest [Holloway] based solely on the accusation of [Ferguson]." *Rae v. Cnty. of Suffolk*, 693 F. Supp. 2d at 225-26 ("[e]ven if there could be some question as to whether [complainant's] status as a fellow officer indicated a potential need for corroboration of her accusations prior to the arrest of [p]laintiff, it is equally clear that officers of reasonable competence could disagree on the matter, thereby entitling the . . . [d]efendants to qualified immunity with respect to [p]laintiff's claim of false arrest"); *see McBride*, 2000 WL 559087 at *15 (finding officers entitled to qualified immunity where they relied, in part, on statements of alleged victim whom they knew to have a history of animosity with suspect).

## **CONCLUSION**

For the reasons stated above, judgment shall be awarded in favor of the defendant.

The Clerk of the Court is hereby directed to enter judgment accordingly.

**IT IS SO ORDERED.**


_____*s/Marian W. Payson*_____
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
July _22_, 2013